## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**RONALD TEDFORD,**

> **Plaintiff,**

**v.**                                      **Case No.  8:05-cv-1017-T-30TGW**

**UNITED STATES OF AMERICA,**

> **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant United States of America's Dispositive Motion for Summary Judgment on the Basis of Judicial Estoppel (Dkt. 34) and Plaintiff's Response in Opposition to the Same (Dkt. 38).

### FACTUAL BACKGROUND

On February 20, 2002, Plaintiff filed a voluntary petition under Chapter 13 of the Unites States Bankruptcy Code.  On April 5, 2002, Plaintiff underwent elective left ankle fusion surgery.  This surgery was conducted by Dr. Victor J. Bilotta, an employee of the Department of Veterans Affairs (hereinafter "VA"), at the Regional Medical Center in Bay Pines, Florida.  Less than three months after the surgery, Plaintiff began experiencing complications with his left ankle, specifically, Plaintiff complained of a sharp sticking pain in the center and back of his ankle.  On June 10, 2002, Plaintiff visited an outpatient clinic facility to determine the source of the pain.  An x-ray of his ankle was taken and it was discovered  that a screw used in fusing his ankle was broken and close to the skin's surface.

On July 2, 2002, Plaintiff again returned to Bay Pines to have his cast removed. Plaintiff alleges that upon removal of his cast, he noticed the screw protruding through the surface of his skin. Additionally, the cast and dressing were soaked with blood. Upon seeing the condition of his ankle, Plaintiff became upset and demanded photographs be taken. While his request was initially refused, he eventually was allowed to take a picture of his ankle, the screw and the cast.

On August 6, 2002, Plaintiff returned to Bay Pines. Dr. Bilotta, upon examining Plaintiff's ankle, recommended that the broken screw be removed and scheduled surgery for September 13, 2002. However, Plaintiff cancelled the surgery on September 12 and requested that the procedure be conducted at another VA facility. According to Plaintiff's Complaint, because "the original surgery had failed and resulted in a broken screw and the Steinman pin protruding the skin, [ Plaintiff had] good cause to lose confidence in the ability of Bay Pines to correct the problem." (Dkt. 1 at 18).

On October 30, 2002, Plaintiff filed a Chapter 13 bankruptcy plan along with a Statement of Financial Affairs and Summary of Schedules. Under the section of the schedule wherein he was asked to identify "other contingent and unliquidated claims," Plaintiff answered "none."

On January 8, 2003, Plaintiff was examined by a Dr. Lee Wittenberg at the VA in Miami. Dr. Wittenberg diagnosed Plaintiff as having a "nonunion left ankle" and noted that the broken screw was protruding through Plaintiff's skin. He recommended a revision ankle fusion and scheduled Plaintiff for surgery. Plaintiff, however, cancelled this surgery and thereafter visited several private physicians to have them remove the screw. These

physicians, however, refused to remove the broken screw from his ankle.  Consequently, on February 21, 2003, Plaintiff was transported back to the VA in Miami where his screw was removed.  After removal of the screw, Plaintiff decided to proceed with the ankle replacement surgery.

On March 5, 2003, the Bankruptcy Court denied confirmation of Plaintiff's Chapter 13 Plan and dismissed his case.  On March 24, 2003, Plaintiff filed a Motion to Convert his Chapter 13 petition to Chapter 7, and on April 2, 2003, Plaintiff's Chapter 13 was converted to a Chapter 7.  On January 12, 2004, Plaintiff was discharged as a debtor in his Chapter 7 proceedings.

On March 2, 2004, Plaintiff filed a claim under the Federal Tort Claims Act, alleging medical malpractice and seeking damages totaling $1,500,000.  This claim was administratively denied on January 4, 2005.  Plaintiff, on May 31, 2005, filed the instant action.

## DISCUSSION

**I.     Summary Judgment Standard.**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this rather exacting standard.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  In applying this framework, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir.1998); Allen v. Tyson Foods, Inc.,

121 F.3d 642, 646 (11th Cir.1997).

Equally clear, however, is the principle that the nonmoving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his or her favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ··· must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir.1998) ("Summary judgment may be granted if the evidence is 'merely colorable.'") (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. See Earley, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

## II.   Judicial Estoppel.

Under the theory of judicial estoppel, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the same party in a previous proceeding.  See Barger v. City of Carterville, Georgia, 348 F.3d 1289,1293 (11th Cir.

2003)(citing   Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002)).   The applicability of judicial estoppel turns on two factors: (1) whether the allegedly inconsistent statements were made under oath in a prior proceeding; and (2) whether the inconsistencies were calculated to make a mockery of the judicial system. See Barger, 348 F.3d at 1293-94. "For purposes of judicial estoppel, intent is a purposeful contradiction - not simple error or inadvertence." Id. at 1294.  However, the determination whether to invoke judicial estoppel is left to the discretion of the court.     See Parker v. Wendy's International, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) (citing Burnes, 291 F.3d at 1285).

Defendant argues that Plaintiff should be precluded from pursuing his medical malpractice claim because he failed to disclose the potential claim in his Chapter 13 bankruptcy proceedings.  However, in reviewing the record, it does not appear Defendant has established that Plaintiff made an inconsistent statement in a prior proceeding.  Defendant argues that Plaintiff had knowledge of his potential medical malpractice claim three months after he filed his sworn Chapter 13 schedules of bankruptcy.  In support of this argument, Defendant cites Plaintiff's deposition testimony wherein he testified he felt his bankruptcy was related to his April 2002 surgery (Dkt. 34-6 at 2).   However, Plaintiff also testified that at the time he filed for bankruptcy, he did not believe, based on information received by the VA and attorneys to whom he had spoken, that he had a viable claim.  Taking these facts in the light most favorable to Plaintiff, as this Court must, Defendant has failed to present any evidence that Plaintiff was aware of his medical malpractice claim at the time he filed his Chapter 13 Plan. While the record reveals Plaintiff may have had knowledge of his potential claim at or around the time his Chapter 13 plan was converted to a Chapter 7 (Dkt, 34-2), his

knowledge at that time has no bearing on whether he is judicially estopped from pursuing his claims based on his failure to include potential claims in his Chapter 13 plan.   Pursuant to 11 U.S.C. §348(f)(1), the property of the estate in a Chapter 7 case, upon conversion from a Chapter 13 case, consists of property of the estate as of the date of filing of the Chapter 13 petition, not the date of the conversion. See 11 U.S.C. §348(f)(1).  However, if it can be established that the conversion was done in bad faith, property of the Chapter 7 estate becomes property of the estate as of the date of conversion.  See 11 U.S.C. §348(f)(2). Defendant has not argued that Plaintiff's conversion to Chapter 7 was done in bad faith. Defendant has only argued that Plaintiff's claim is judicially estopped based on his failure to include his potential claim in his Chapter 13 plan.  Defendant may litigate the bad faith issue at trial if it desires.

It is therefore ORDERED AND ADJUDGED that Defendant United States of America's Dispositive Motion for Summary Judgment on the Basis of Judicial Estoppel (Dkt. 34) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on April 12, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-1017 Motion of Summary Judgment - Estoppel.frm